UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK SERAFINN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 03 C 9409 |
| ) | |
| INTERNATIONAL BROTHERHOOD OF ) | Judge Virginia M. Kendall |
| TEAMSTERS, LOCAL UNION NO. 722; ) | |
| STEVEN MONGAN, individually and in his ) | |
| capacity as President of Local 722; and JOINT ) | |
| COUNCIL 65 of the INTERNATIONAL ) | |
| BROTHERHOOD OF TEAMSTERS, ) | |
| INTERNATIONAL UNION, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mark Serafinn ("Plaintiff" or "Serafinn") brought this action under §§ 101(a)(1), (2), (5) and 609 of the Labor Management Reporting and Disclosure Act of 1959 (the "LMRDA"), 29 U.S.C. § 401 *et seq.*, against the International Brotherhood of Teamsters, Local Union No. 722 ("Local 722"); Steven Mongan, the President of Local 722 ("Mongan"); and Joint Council 65 of the International Brotherhood of Teamsters ("the Joint Council" or "JC 65") (collectively "Defendants"). Plaintiff alleged that intra-union disciplinary charges were brought against him in retaliation for exercising his rights protected under the LMRDA. Plaintiff also alleged that his disciplinary hearing on those charges lacked the procedural safeguards guaranteed by the LMRDA. JC 65 counterclaimed for payment of the fine that it assessed against Plaintiff when it found him guilty of the rules violation alleged in the disciplinary charges.

At summary judgment, this Court dismissed all of Plaintiff's claims against JC 65 and granted JC 65 judgment on its counterclaim. This Court also dismissed Plaintiff's § 101(a)(1) and

(a)(5) procedural claims as against all Defendants. This Court, however, found that genuine issues of material fact existed as to whether Steven Mongan and Local 722 caused the disciplinary charges to be brought against Plaintiff in retaliation for the exercise of his rights protected in the LMRDA. On November 14, 2006, the jury returned a verdict in favor of Plaintiff on his retaliation claim against Local 722 and against Plaintiff on his retaliation claim against Steven Mongan. The jury awarded Plaintiff $50,000 in compensatory damages and $55,000 in punitive damages.

The parties have filed several post-trial motions. Plaintiff has filed a Motion for Equitable Relief and Attorneys' Fees wherein the equitable relief he requests is an injunction ordering Local 722 not to engage in any future retaliation and an order reinstating him into the union. Plaintiff seeks essentially the same relief in his Motion Regarding Upcoming Election. Plaintiff also moves for a new trial against Steven Mongan and JC 65. Local 722 moves for a new trial on Plaintiff's claims against it or, in the alternative, to reduce the amount of the compensatory and/or punitive damages awarded by the jury.

Plaintiff is not entitled to equitable relief. First, an injunction is not warranted because Plaintiff has not demonstrated that Local 722 has engaged or threatened to engage in further retaliation. Second, reinstatement or a stay of the discipline imposed against Plaintiff is not appropriate because Local 722's retaliatory motive was not the legal cause of his suspension from the union. Plaintiff also is not entitled to a new trial against Mongan or JC 65. The evidence reasonably supports the jury's verdict denying Plaintiff's claim against Mongan and any additional evidence that came out during trial regarding JC 65 was not sufficient to grant Plaintiff relief from this Court's prior judgment dismissing his claims against JC 65. Likewise, Local 722 has not established that is was denied a fundamentally fair trial nor that the jury's award of the damages was

2

excessive or irrational. This Court reserves judgment on Plaintiff's request for attorneys' fees.

## I. Plaintiff's Motion for Equitable Relief

The jury found that Local 722 prosecuted the charges against Plaintiff because he exercised his rights protected under the LMRDA. *See Craft v. Board of Trustees of University of Illinois*, 793 F.2d 140, 143 (7th Cir. 1986) ("It is well-settled that the court may not make findings contrary to or inconsistent with the jury's resolution . . . of that same issue as implicitly reflected in its general verdict") (citation omitted). Plaintiff now asks this Court to reinstate him to the union because the chain of events which led to his suspension would not have been initiated but for Local 722's unlawful retaliation. On April 18, 2002, JC 65 imposed a fine of $9,082.50 against Serafinn and suspended him for six months from membership in the Teamsters' union. JC 65 assessed the fine after finding Plaintiff guilty of charges brought by two members of Local 722. The charges were referred to JC 65 by the executive board of Local 722. The charges alleged that Serafinn misused his union office to refer himself out to a job site ahead of other teamsters on the referral list. Serafinn has not paid the fine. Article XIX, Section 10(d) of the International Brotherhood of Teamsters Constitution states: "In the event of noncompliance with the decision handed down by a trial or appellate body, the member . . . shall stand suspended from all rights and privileges under the Constitution until the provisions of the decision have been complied with . . ." Because Serafinn has not paid the fine, his union rights and privileges have been suspended since 2002 pursuant to § 10(d).

Plaintiff cites *Gilbrook v. City of Westminster*, 177 F.3d 839, 853-55 (9th Cir. 1999), for the proposition that when charges are sustained by a neutral third party, it does not relieve the defendant who initiated the charges of liability for retaliation, including back pay and other compensatory

3

damages. The paramount question in *Gilbrook* and other analogous cases is whether the ultimate decisionmaker made an "independent, legitimate decision to [punish] the plaintiff, uninfluenced by the retaliatory motives of the subordinate."[1] *Id.* at 855. The Seventh Circuit has applied the same analysis to situations where a subordinate, motivated by a discriminatory purpose, recommends to a supervisor that the plaintiff be fired; the supervisor then makes the actual termination decision. *See Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir. 1997). If the decisionmaker made an independent decision regarding the plaintiff, there is no causal link between the retaliatory motive and the adverse action. *See Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990). Applied to Plaintiff's situation, the question is whether Local 722 unduly influenced or manipulated the final decision to fine Serafinn or whether JC 65 made a judgment based upon an independent assessment of all the evidence. *See Conn v. GATX Terminals Corp.*, 18 F.3d 417, 420 (7th Cir. 1994).

JC 65 did not act as a rubber stamp for Local 722 when it decided to fine and suspend Plaintiff. *See Gusman v. Unisys Corp.*, 986 F.2d 1146, 1147 (7th Cir. 1993). This Court held on summary judgment that JC 65 afforded Plaintiff a full and fair hearing on the disciplinary charges against him. *See* 29 U.S.C. § 411(a)(5). At the hearing, Plaintiff was given the opportunity to

---

[1] *See Long v. Eastfield College*, 88 F.3d 300, 307 (5th Cir. 1996) (stating that, if a decisionmaker based his decision on his own independent investigation, the causal link between the subordinates' allegedly retaliatory intent and the terminations would be broken); *Saye v. St. Vrain Valley School Dist. RE-1J*, 785 F.2d 862, 867 (10th Cir. 1986) ("School Board members stated by deposition that they had relied completely on the recommendations of the administration in voting not to renew Saye"); *Hickman v. Valley Local School Dist. Bd. of Ed.*, 619 F.2d 606, 610 (6th Cir. 1980) ("The evidence does not demonstrate that the Board was insulated from the principal's or superintendent's reasoning or that the Board reached its decision on the basis of independent, intervening factors. Where this line of causation exists, and the principal or superintendent predicated their recommendations on constitutionally impermissible reasons, these reasons become the bases of the decision by the Board members.")

testify, present evidence and confront the witnesses and evidence against him. Following the hearing, JC 65 issued a 27-page opinion explaining its assessment of the evidence and charges against Plaintiff. Because JC 65 made an independent determination on the charges against Plaintiff, the casual chain between Local 722's improper motives and Plaintiff's suspension from the union was broken. *See Willis v. Marion County Auditor's Office*, 118 F.3d 542, 547 (7th Cir. 1997) ("[I]t is clear that, when the causal relationship between the subordinate's illicit motive and the employer's ultimate decision is broken, and the ultimate decision is clearly made on an independent and a legally permissive basis, the bias of the subordinate is not relevant"). As such, Plaintiff is not entitled to reinstatement in the union based upon the jury's verdict.

In asking for an injunction against future retaliation, Plaintiff relies solely on the jury's verdict that Local 722 retaliated against him. Local 722's past conduct, without more, is not sufficient to justify the exceptional remedy of an injunction. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 109 (1998) ("Because respondent alleges only past infractions of EPCRA, and not a continuing violation or the likelihood of a future violation, injunctive relief will not redress its injury"). To the extent that Plaintiff would argue that Local 722 continues to retaliate by refusing to assign him work or by excluding him from union activities, both of these actions are lawful consequences of his failure to pay the fine assessed by JC 65, not improper retaliation. Accordingly, Plaintiff has not made a clear showing that an injunction is necessary to protect his or other members' constitutional rights. *See Wooley v. Maynard*, 430 U.S. 705, 712 (1977).

II.     **Plaintiff's Motions for New Trial Against Steven Mongan and Joint Council 65**

Plaintiff has moved for a new trial on his claims against Mongan and JC 65 under Federal Rules of Civil Procedure 50, 59 and 60. A court should grant a new trial where "the verdict is

against the clear weight of the evidence, the damages are excessive or the trial was unfair to the moving party." *Miksis v. Howard*, 106 F.3d 754, 757 (7th Cir. 1997); *see Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993) ("[C]ivil litigants are entitled to a fair trial, not a perfect one"). Defendants argue that Plaintiff's motions for new trial are untimely because they were not filed within 10 days. *See* Fed. R. Civ. P. 50(b) ("The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after the entry of judgment or (if the motion addresses a jury issue not decided by a verdict) no later than 10 days after the jury was discharged"); Fed. R. Civ. P. 59(b) ("Any motion for a new trial shall be filed no later than 10 days after entry of the judgment"). A district court may not forgive the failure to file within the 10-day period absent "unique circumstances." *See Hope v. U.S.*, 43 F.3d 1140, 1143 (7th Cir. 1994); *Bailey v. Sharp*, 782 F.2d 1366, 1368 (7th Cir. 1986). On November 17, 2006, this Court granted Defendants' oral motion to extend the time for filing post-trial motions. But a minute order from the district court granting the parties an extension typically is not a unique circumstance. *See Green v. Bisby*, 869 F.2d 1070, 1072-73 (7th Cir. 1989). This Court need not examine whether other unique circumstances exist since Plaintiff's motions can be denied on their merits.

  **A.** **New Trial Against Mongan**

Plaintiff first argues that he is entitled to judgment or a new trial against Mongan based upon the evidence at trial that Mongan retaliated. According to Plaintiff's Motion, Mongan testified at trial that he brought the internal union charges against Plaintiff because Plaintiff published a newsletter critical of Mongan and Local 722 and to prevent Plaintiff from assembling with other Local 722 members. Plaintiff offers no citations to the trial transcript for these statements. *See Spina v. Forest Preserve Dist. of Cook County*, 207 F. Supp. 2d 764, 769 (N.D. Ill. 2002) (criticizing

failure of movant for new trial to cite to relevant portions of trial transcript). A full review of the entire record at trial, as presented through citations to relevant portions of the transcript and exhibits, is usually necessary to determine judgment as a matter of law. *See Byrd v. Illinois Dept. of Public Health*, 423 F.3d 696, 700 (7th Cir. 2005). This Court will not overturn the jury's verdict based upon isolated bits of testimony as remembered and represented by Plaintiff.

Plaintiff additionally argues that "[c]learly, the jury was confused and did not believe it could issue a verdict against Mongan and the local." This is where Plaintiff's argument begins and ends. After neither party proposed an instruction on agency, this Court proposed the following instruction to which neither party objected:

> Under the law, Defendant Local 722 is considered to be a person. It can only act, however, through its employees, agents, officers or executive board. Therefore, a union is responsible for the acts of its employees, agents, officers or executive board performed within the scope of their authority.
>
> Steven Mongan is a defendant in this case in his individual capacity and his capacity as an agent of Local Union No. 722. If you determine that Steven Mongan was engaged in the business of Local Union No. 722 and acting within the scope of his authority as President of Local Union No. 722 you may hold Local Union No. 722 liable for his actions. If you determine that Steven Mongan was not engaged in the business of Local Union No. 722 or not acting within the scope of his authority as President of Local Union No. 722 you only may hold Steven Mongan individually liable for his actions.

*See Kinslow v. American Postal Workers Union, Chicago Local*, 222 F.3d 269, 279 (7th Cir. 2000) ("[A] Union can only act through its agents, and the actions and intentions of the Local president would usually be imputable to the Local").[2] The jury found in favor of Plaintiff on his claim against

---

[2] *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) ("An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment"); *Baker v. Buffenbarger*, 2006 WL 1049866, *8 (N.D. Ill. 2006), *citing Aguirre*

Local 722 and against Plaintiff on his claim against Mongan. "Undoubtedly, a verdict exonerating an agent while holding his principal liable for his actions would be an inconsistent resolution of factual questions." *Lincoln v. Board of Regents of University System of Georgia*, 697 F.2d 928, 934-935 (11th Cir. 1983); *see also Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994) ("Agents are liable for their own torts"). But this does not necessarily mean that judgment should be entered against Mongan. *See Heno v. Sprint/United Management Co.*, 208 F.3d 847, 853-854 (10th Cir. 2000) ("The difficulty in granting judgment as a matter of law is in determining whether the jury was engaged in honestly and in good faith exonerating the servant and capriciously rendering a verdict against the master, or honestly and in good faith finding the servant guilty of [retaliation], but capriciously exonerating him because of the financial ability of the employer to better pay the judgment."). Faced with truly inconsistent verdicts, the solution is a new trial. *See Freeman v. Chicago Park Dist.*, 189 F.3d 613, 615 (7th Cir. 1999) ("There is no priority of one answer over another when the verdicts are inconsistent"). But before a new trial is ordered, a court must view the evidence in any reasonable manner that resolves the inconsistency in the jury's verdict. *See American Cas. Co. v. B. Cianciolo, Inc.*, 987 F.2d 1302, 1306 (7th Cir. 1993) ("[W]e should do what we can to save the verdict against the spectre of inconsistency").

One way to resolve the inconsistency would be if the evidence did not reasonably support a judgment against Local 722 or if the evidence overwhelming showed Mongan liable. *See American Cas.*, 987 F.2d at 1305 ("A judge may dissipate the inconsistency by setting aside one of the conflicting verdicts, if that verdict was unsupported by the evidence"). Neither party has showed that

---

*v. Automotive Teamsters,* 633 F.2d 168, 170-73 (9th Cir. 1980) (discussing why the more stringent agency standard set out in 29 U.S.C. § 106 is inappropriate in LMRDA cases and why the common law agency standard is appropriate in such cases).

the evidence was so lopsided. Another possible resolution is if Local 722 could have been found liable as a result of the actions of other agents of the local union. The jury heard testimony from other employees, officers and executive board members regarding their roles in prosecuting the charges against Serafinn. The official minutes from Local 722's executive board meeting state that the executive board voted to refer the charges to JC 65 upon a motion from Ronald Ruberstell seconded by George Harden. Michael Reilly, Secretary-Treasurer on Local 722, sent a letter to JC 65 stating that the Local 722 Executive Board unanimously requested that the charges brought by Williams and Gowan each be forwarded to JC 65 for disposition. Thus, the jury could have assigned liability to Local 722 based on the actions of the executive board and the local's members rather than the conduct of Mongan alone. *See Kinslow*, 222 F.3d at 279 (affirming judgment against union where members ratified and supported the conduct of the president). Because the jury's verdicts as to Local 722 and Mongan can be reconciled, a new trial is not a necessary solution.

### B. New Trial Against JC 65

Plaintiff relies on "new evidence" that came out during trial in arguing for a new trial against JC 65. In reality, Plaintiff is asking this Court to reconsider its grant of summary judgment in favor of JC 65. Plaintiff's new evidence allegedly shows JC 65's interference on behalf of Mongan and against Serafinn in Local 722's affairs. JC 65 acted as the review board for the election challenges that Serafinn filed after his narrow defeat to Mongan. This Court considered JC 65's role in deciding the election challenges when it granted summary judgment. But even if this evidence was newly discovered or concealed through fraud, the fact that JC 65 ruled against Serafinn and took steps to stop Serafinn from interfering with Mongan's leadership of Local 722 does not reasonably demonstrate its bias or a role in retaliating against Plaintiff. *See* Fed. R. Civ. P. 60(b) (laying out

grounds for granting a party relief from a district court's judgment). Accordingly, Plaintiff is denied relief from this Court's order granting JC 65 summary judgment. *See Dickerson v. Board of Education of Ford Heights, Ill.*, 32 F.3d 1114, 1116 (7th Cir. 1994) (stating that Rule 60(b) relief is "an extraordinary remedy and is granted only in exceptional circumstances").

### III. Local 722's Motion for a New Trial and/or Reduction in Damages

Local 722 moves for a new trial on Plaintiff's claims against it or, alternatively, for the jury's award of damages against it to be reduced. Local 722 offers several grounds to support its motion: (1) Plaintiff presented insufficient evidence that (a) Local 722 retaliated, (b) Plaintiff suffered compensable injury, (c) Local 722 proximately caused that injury, and (d) Local 722's conduct warranted an award of punitive damages; (2) the jury's assessment of compensatory and punitive damages was excessive; (3) the jury was improperly instructed on (a) the *Mt. Healthy* burden shifting; (b) Timothy Craig's credibility and his convictions for DUI and driving while his license was revoked; (c) proximate cause; and (d) JC 65's decision that Serafinn violated union rules; (4) Plaintiff improperly introduced evidence of the history of Teamsters for a Democratic Union, and the activities of the International Brotherhood of Teamsters, including IBT President James Hoffa; and (5) the jury verdict as to Local 722 was inconsistent with the verdict as to Mongan.

Local 722 raised many of these issues in its Motion for New Trial via a one-sentence statement without supporting case law or analysis. *See Spina*, 207 F. Supp. 2d at 769 ("The District's Motion for New Trial . . . appears to be nothing more than an attempt to preserve issues for review on appeal."). These issues are not raised again in Local 722's Memorandum in support and Plaintiff offers no response in its opposition to a new trial. This Court will not shadowbox on these issues. Local 722's issues in (1)(a), (1)(d), (3)(c), (3)(d), (4) and (5) are waived. *See Kramer*

10

*v. Banc of America Securities, LLC*, 355 F.3d 961, 964 n. 1 (7th Cir. 2004) ("We have repeatedly made clear that perfunctory and undeveloped arguments that are un-supported by pertinent authority, are waived (even where those arguments raise constitutional issues)"), *quoting United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). Local 722's remaining issues involve its proposed jury instruction on the *Mt. Healthy* burden shifting, the Court's instruction to the jury regarding Timothy Craig's testimony, Plaintiff's proof of causation and compensable injury and whether the jury erred in its award of compensatory and punitive damages.

### A. Jury Instructions

Local 722 is entitled to a new trial if a jury instruction wrongly or inadequately stated the law and that error caused it prejudice. *See Gile v. United Airlines, Inc.*, 213 F.3d 365, 374-375 (7th Cir. 2000); *McGeshick v. Choucair*, 9 F.3d 1229, 1232 (7th Cir. 1993) (a new trial is warranted when "considering all the instructions, the evidence and the arguments, it appears that the jury was misled and its understanding of the issues was seriously affected to the prejudice of the complaining party") (internal quotation marks and ellipses omitted).

#### 1. "Mixed Motive" / *Mt. Healthy* Instruction

This Court instructed the jury under Seventh Circuit Pattern Civil Jury Instruction ("Pattern Instruction") 3.02, Retaliation. Local 722 contends that it was prejudiced because this Court did not instruct the jury on the burden shifting analysis outlined in *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274 (1977). In Local 722's proposed instruction, the initial burden would have been on Plaintiff to show that his exercise of free speech was a motivating factor in Local 722's decision to prosecute him. If the jury found Plaintiff met his burden, the jury would be instructed that it must consider Local 722's claim that it would have taken the same action even if Plaintiff had not

11

exercised his rights under the LMRDA. The proposed instruction concluded that: "If you find that Local 722 has met this burden, then you should find in favor of Local 722 on this claim. If you find that Serafinn has proved that Local 722 would not have prosecuted the union charges against Serafinn if everything else had been equal, then you should find in favor of Serafinn on this claim." Under Pattern Instruction 3.02, this Court instructed the jury: "To determine that plaintiff was prosecuted because of the exercise of his rights, you must decide that defendants would not have prosecuted charges against plaintiff if he had not exercised his rights but everything else had been the same."

The Committee Comments to Pattern Instruction 3.01 discourage the use of longer, more complicated instructions in discrimination and retaliation cases. *See* comment c. to Pattern Instruction 3.01 ("The Committee expects that the pattern instruction which has the advantage of streamlining the jury's task into a single and easily understood sentence, will be appropriate in most cases."). The Comments recognize, however, that in certain mixed motive cases, a court may want to provide a more detailed instruction that would permit defendants to limit their liability if they can prove that they would have made the adverse employment decision regardless of the plaintiff's protected class. *See id.* The Comments conclude, however, that "[w]ithout clear guidance in the circuit case law, the Committee cannot offer assistance in determine when a 'mixed motive' instruction is appropriate." *Id.* Exercising its discretion, this Court determined that the Pattern Instruction on retaliation was appropriate. In opting to give the standard retaliation instruction, this Court also refused Plaintiff's instruction that would have required him only to establish that retaliation was a "motivating factor" in Defendants' decision to prosecute the charges against him. *See* comment b. to Pattern Instruction 3.01 ("The Committee drafted these instructions with the

12

understanding that the 'motivating factor' language is appropriate in mixed motive cases"). Local 722 did not, and has not, provided a reason why this case is uniquely appropriate for a mixed motive instruction. On this point, it cannot be enough for a mixed motive instruction that a defendant offers an alternative reason for their actions, virtually every defendant offers a legitimate, non-retaliatory reason to counter the plaintiff's claim of retaliation.

The Pattern Instruction on retaliation correctly instructed the jury on the law. Further, this Court did not restrict Local 722's ability to argue its non-retaliatory reasons for bringing the charges or to introduce evidence in support thereof. In light of the evidence presented, whatever subtle difference may exist between the Pattern Instruction on retaliation and Defendants' proposed instruction could not have led the jury to find Local 722 liable for retaliation when it otherwise would not have. Because the retaliation instruction did not misstate the law nor prejudice Local 722, a new trial is not warranted. *See Boyd v. Illinois State Police*, 384 F.3d 888, 894 (7th Cir. 2004) ("To win a new trial based on an erroneous jury instruction, [the complaining parties] must show both that the instructions did not adequately state the law and that the error was prejudicial to them because the jury was likely to be confused or misled").

### 2. Timothy Craig

The disciplinary charges against Serafinn accused him of misusing his union office to refer himself out to the Venture job site in front of other members on the referral list. At 12:49 p.m. on December 24, a fax was sent from Local 722 to Venture in Serafinn's handwriting stating:

```
PLEASE DELETE:   TIMOTHY CRAIG                )
                 [address and soc. sec. #]     )    TEAMSTER FOR
                                               )    COMM-ED
PLEASE ADD:      MARK R. SERAFINN              )    MARSAILLES, IL
                 [address and soc. sec. #]     )
```

Serafinn showed up at the training site for Venture on the morning of January 2, Craig did not show up. Craig testified that he did not go to Venture because Serafinn called him at home and told him not to show up. Serafinn argued on summary judgment and at trial that the true reason that Craig did not show up for the job was because he was in jail on a Driving Under the Influence charge or that Craig was unqualified for the position because he had his license revoked as a result of a DUI conviction. This Court admitted the evidence of Craig's DUI conviction and license revocation because it was potentially relevant to why Craig did not show up for work at Venture and offered an entirely different reason for his failure to go to the Venture job thereby reflecting on his credibility. Plaintiff never submitted evidence proving that the conviction was a felony or involved an act of dishonesty. *See* Fed. R. Evid. 609. This Court instructed the jury under Pattern Instruction 2.11 that:

> You have heard evidence that Timothy Craig has been convicted of a crime. You may consider this evidence only in deciding whether Timothy Craig's testimony is truthful in whole, in part, or not at all. You may not consider this evidence for any other purpose.

Local 722 argues that this instruction was wrong because Plaintiff never established that the convictions qualified as impeachment under Rule 609 and because the jury should have considered the evidence for another purpose – why Craig did not show up at Venture. Local 722 argues that by permitting the jury to consider Craig's credibility to be impeached by misdemeanor convictions, Plaintiff's credibility was thereby enhanced (vis-a-vis Craig's) with respect to those matters where his testimony differed with Craig's, all to the alleged prejudice of Local 722. Regardless of any error in the instruction, such error did not substantially affect the jury's understanding of the material issues in the case. First off, Plaintiff, not Local 722, wanted the jury to consider the evidence for the

separate purpose of why Craig did not show up at Venture. But more important, as this Court found at summary judgment, the facts surrounding Craig are largely immaterial. Even if Craig were not eligible for work at Venture, Plaintiff still took the position at Venture from some other Teamster because Plaintiff would not have been next on the referral list had Craig been unavailable. Indeed, the whole issue of Craig's absence at Venture was collateral to the heart of this case which was the retaliatory intent of Local 722 in prosecuting the charges. The instruction, considered in its proper context among all the instructions, evidence and arguments presented at trial, did not unduly prejudice Local 722's case. *See Gile*, 213 F.3d at 375 ("[E]ven if the jury instruction was patently incorrect, [the complaining party] still must establish that it was prejudiced by the improper instruction").

   B.   **Sufficiency of the Evidence that Local 722 Proximately Caused Plaintiff A Compensable Injury and Sufficiency of the Evidence Supporting Damages**

The jury returned a verdict in favor of Plaintiff on his retaliation claim against Local 722 and awarded Plaintiff $50,000 in compensatory damages and $55,000 in punitive damages. Local 722 argues that Plaintiff failed to produce any evidence that it proximately caused him an injury. As to punitive damages, Local 722 argues that the award should be reduced because its actions were not egregious and the award poses a real threat to the solvency of the local union. This Court may remit the jury's award of damages when the award is "monstrously excessive" or there is "no rational connection between the evidence on damages and the verdict." *Frazier v. Norfolk & Western Ry. Co.*, 996 F.2d 922, 925 (7th Cir. 1993). In making these determinations, a court should compare the jury award to awards given in similar cases. *See id.*

Local 722 does not challenge the Court's instruction to the jury on the issues of damages.

With regard to compensatory damages, the Court specifically instructed the jury that it could not compensate Plaintiff for any lost wages, benefits or other earnings and that the deprivation of a constitutional right itself was compensable only by a nominal sum such as one dollar. At the same time, the jury was instructed that it could compensate Plaintiff for any mental/emotional pain and suffering that he experienced as a result of Defendants' conduct in prosecuting charges against him. *See Carey v. Piphus*, 435 U.S. 247, 264 (1978) ("[M]ental and emotional distress caused by the denial of [a constitutional right] itself is compensable"). Local 722 argues that Plaintiff testified that his depression was a result of not being able to serve as local union president, an injury not proximately caused by prosecution of the charges. Local 722 also contends that Plaintiff's counsel improperly asked the jury to assign a monetary value to the deprivation of Plaintiff's constitutional right. *See Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299, 309 (1986) (compensatory damages may not be "measured by the jury's perception of the abstract 'importance' of a constitutional right"). Plaintiff counters that, contrary to Local 722's assertions, he testified to humiliation, depression and enormous weight gain caused by prosecution of the charges. Neither party provides citations to the trial transcript for their characterization of the testimony at trial. The sufficiency of the evidence supporting Plaintiff's alleged injury and its cause cannot be decided on the collective, and sometimes conflicting, recollections of the parties and the Court. *See Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 574 (7th Cir. 1995) (plaintiff forfeited claim challenging the sufficiency of the evidence on appeal where he did not submit trial transcript); *O'Sullivan v. City of Chicago*, 2007 WL 671040, *3 n.1 (N.D. Ill. 2007) (requesting relevant portions of transcript be provided to the court). Without support to challenge the jury's verdict as inconsistent with the testimony at trial, the Court can not say that the compensatory damage amount is unreasonable based upon the trial testimony

16

that the jury weighed.

Local 722 also suffers from a lack of evidence in its challenge to the jury's award of punitive damages. While Local 722 states that it can demonstrate by means of probative, relevant evidence that payment to Plaintiff of the amount assessed by the jury will cripple the union financially and detract significantly from its ability to represent its members, it has not offered any such evidence. This Court instructed the jury that it may consider a defendant's financial condition in assessing punitive damages, Local 722 offered none. *See Kemezy v. Peters*, 79 F.3d 33, 36 (7th Cir. 1996) holding that it is a defendant's burden to introduce evidence of net worth before a jury for purposes of minimizing a punitive damages award). Absent evidence of Local 722's financial situation, this Court has no reason to believe that it cannot pay the judgment entered against it.

Last, the jury's award of damages is not excessive in relation to other cases involving similar facts. *See Deloughery v. City of Chicago*, 422 F.3d 611, 620-21 (7th Cir. 2005) (comparing jury awards in retaliation cases under other statutes). In *Kinslow*, the Seventh Circuit affirmed a $150,000 punitive damages award in a LMRDA retaliation case. *See id.* at 278-79. Although the conduct was more egregious in *Kinslow*, the award commensurately was three times greater the jury's award to Plaintiff. *See id.* In the cases relied upon by Local 722, *Quinn v. Digiulian*, 739 F.2d 637, 651 (D.C. Cir. 1984) and *Petramale v. Laborers' Local #17*, 847 F.2d 1009, 1013, 1014 (2d Cir. 1988), the courts remitted the punitive damages awards principally because of the union's inability to pay the judgments. Additionally, the panel in *Petramale* found $100,000 an appropriate amount to compensate the plaintiff for his emotional pain and embarrassment. *See Petramale*, 847 F.2d at 1013 ("We of course do not claim any omniscience in determining what would constitute a non-excessive award of compensatory damages. . . . About all this panel of three former trial judges

17

can assert is our conscientious belief that an award of $100,000 would reflect substantial justice."). Given that the Court has no official record of the trial proceedings by which to weigh the sufficiency of the evidence supporting Plaintiff's harm and its cause, no evidence of Local 722's financial condition and the fact that the jury's award of compensatory and punitive damages is comparable to awards in other LMRDA and retaliation cases, this Court denies Local 722's request to vacate or reduce the jury's award of damages.

**Conclusion and Order**

Wherefore, Plaintiff's Post-Trial Motion for Equitable Relief and Attorneys' Fees is denied in part. Local 722's Motion for New Trial Under Rule 59 of the Federal Rules of Civil Procedure is denied. Plaintiff's Post-trial Motion for Entry of Judgment or for a New Trial and Appropriate Relief Against Joint Council 65 is denied. Plaintiff's Post-trial Motion for Entry of Judgment or for a New Trial Against Defendant Steve Mongan is denied. Local Union 722's and Steven Mongan's Motion to Strike Plaintiff's Post-trial Motion for Entry of Judgment or for a New Trial Against Defendant Steve Mongan is denied as moot. Plaintiff's Motion to Supplement Plaintiff's Post-Trial Motion for Equitable Relief and Attorneys' Fees is granted. Plaintiff's Motion Regarding Upcoming Election is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: June 5, 2007